# IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. **CF0362-21** |
| | ) | GPD REPORT NOS. 21-17543/21-17544 |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| **JOHN DUANE HATTIG, JR.,** | ) | DECISION AND ORDER |
| DOB: 02/27/1980 | ) | RE. DEFENDANT'S MOTION TO |
| | ) | ENFORCE THE PRIOR PLEA |
| Defendant. | ) | ACCEPTED AGREEMENT |
| | ) | |

## INTRODUCTION

This matter came before the Honorable Maria T. Cenzon upon Defendant John Duane Hattig, Jr.'s ("Defendant" or "Defendant Hattig") Motion to Enforce the Prior Accepted Plea Agreement (the "Motion"). Representing the Defendant is Assistant Alternate Public Defender Peter J. Santos (APD Santos). Representing the People of Guam ("the People") is Assistant Attorney General Valerie A. Nuesa. The Court held a Motion Hearing on Defendant's Motion on November 21, 2024. After hearing oral arguments from the parties, the Court took the Motion under advisement pursuant to CVR 7.1(e)(6)(D) of the LOCAL RULES OF THE SUPERIOR COURT OF GUAM.[1]

---

[1] At the end of the Motion Hearing, the Court separately took under advisement Defendant's Motion to Enforce the Prior Accepted Plea Agreement. *See Min. Entry* (Nov. 21, 2024). On the other unresolved motions brought by the Defendant, the Court ordered supplemental briefings by the parties. *See Order Re. Briefing Schedule* (Dec. 5, 2024).

After having received and reviewed the papers, reviewed oral arguments and the file herein, the Court issues the following Decision and Order **DENYING** Defendant's Motion to Enforce the Prior Plea Agreement.

## PROCEDURAL AND FACTUAL BACKGROUND

The procedural history of this case is important to the Court's determination. Consequently, the Court details it here despite its length. This matter began on July 30, 2021, upon the grand jury returning an Indictment against Defendant Hattig for the following offenses: the First Charge of Possession of a Schedule II Controlled Substance (As a Third Degree Felony), the Second Charge of Possession of a Schedule IV Controlled Substance (As a Third Degree Felony), the Third Charge of Possession of a Concealed Firearm (As a Third Degree Felony), and the Fourth Charge of Possession of Firearm Without a Firearms Identification Card (As a Third Degree Felony). On January 19, 2024, the grand jury returned a Superseding Indictment against the Defendant for the following offenses: the First Charge of Possession of a Schedule II Controlled Substance with Intent to Deliver (As a First Degree Felony), the Second Charge of Possession of a Schedule II Controlled Substance (As a Third Degree Felony), the Third Charge of Possession of a Schedule IV Controlled Substance (As a Third Degree Felony), the Fourth Charge of Possession of a Concealed Firearm (As a Third Degree Felony), and the Fifth Charge of Possession of a Firearm Without a Firearm's Identification Card (As a Third Degree Felony).

Prior to the filing of the Superseding Indictment, the parties appeared before the Court on October 17, 2023, for a Pre-Trial Conference. At the hearing, the People represented that a plea offer had been accepted in principle barring acceptance of some revisions by defense counsel. *See Min. Entry* (Oct. 17, 2023). Based on the People's representation, the Court vacated Jury Selection and Trial and would set a Change of Plea hearing. *Id.*

On November 20, 2023, the parties appeared before the Court for the scheduled Change of Plea hearing. At this hearing, the Defendant's Change of Plea could not move forward because the formal plea agreement had not been prepared and the assigned prosecutor[2] was unavailable. *See Min. Entry* (Nov. 20, 2023). Defense counsel indicated that a plea would be prepared and notice of the plea would be filed. *Id.* The Court indicated that in lieu of the Change of Plea, the Court would issue new dates for trial pending the filing of the formal plea agreement and the notice of Change of Plea hearing. *Id.* Following this hearing, on January 19, 2024, the People filed the Superseding Indictment against the Defendant.

On July 1, 2024, Defendant Hattig filed his Motion to Dismiss Superseding Indictment Due to Prosecutorial Misconduct/Vindictive Prosecution; Enforce the Prior Accepted Plea Agreement; and Disqualify Acting Chief Prosecutor Gloria Rudolph and Attorney General Douglas Moylan from Further Participation in this Case. Citing animus between himself and the Office of the Attorney General ("OAG"), defense counsel APD Santos contemporaneously filed a Declaration of Counsel on July 1, 2024, in which he stated the following:

> 6. Plea negotiations ensued between March and October, 2023, and on October 13, 2023, Defendant accepted the plea offer. The prosecuting Attorney was Kristine Borja.
> 7. The Court issued a Notice on October. 23, 2023, setting the Change of Plea for November 20, 2023. However, on November 20. 2023, the formal plea agreement had not been drafted, and the plea could not go forward.
> 8. Also on November 20, 2023, the undersigned attended a 9:30 a.m. Change of Plea in the Honorable Judge Vernon P. Perez's courtroom for CF524-23, People v. Charles Warner Edmond where Mr. Edmond pleaded "straight up."
> 9. On December 6, 2023, the undersigned attended a 9:30 a.m. Sentencing Hearing in the Honorable Judge Vernon P. Perez's courtroom for CF524-23, People v. Charles Warner Edmond, where Acting Chief Prosecutor Gloria Rudolph was present for the People.
> 10. During the hearing, the undersigned was highly critical of the Attorney General's Office for their mishandling of the case and Acting Chief Prosecutor

---

[2] Attorney Kristine B. Borja, former Assistant Attorney General.

became very defensive and accused the undersigned of making politically motivated attacks of the Attorney General's Office.

11. Later that day, Acting Assistant Chief Prosecutor Grant Olan sent the undersigned an email rescinding the already accepted plea agreement, without explanation.

12. The undersigned questioned the assigned prosecutor AAG Kristine Borja, who stated that she was questioning the decision herself and when she was informed about the decision by Gloria Rudolph, AAG Borja responded that it was not right and that the plea agreement was very fault and what everyone else gets, AAG Borja was told that if she did not want to accept the decision, she can resign.

15. The undersigned is aware from current and previous prosecutors that Attorney General Douglas Moylan frequently makes disparaging remarks about the undersigned and it is well known that the AG bears great animosity towards the undersigned.

*APD Santos's Decl. of Counsel* (Jul. 1, 2024) ¶¶ 6-12, 15. On July 15, 2024, the People filed their Opposition to Defendant's Motion. Contemporaneously, Acting Chief Prosecutor Gloria Ann L. Rudolph ("ACP Rudolph") filed her Declaration of Counsel on July 15, 2024, declaring:

2. I have never communicated with Alternate Public Defender Santos regarding confidential matters involving this or any other case, including any strategies or discussions related to the Superseding Indictment filed in this case.

3. The factual allegations he makes are false.

*ACP Rudolph's Decl. of Counsel* (Jul. 15, 2024) ¶¶ 2-3. Contemporaneously as well, Attorney Kristine B. Borja ("Attorney Borja") filed her Declaration of Counsel on July 15, 2024. Attorney Borja declared the following:

3. I was previously the prosecutor assigned to this case and it was reassigned when I was assigned to a specific courtroom and specific type cases.

4. Assistant Alternate Public Defender Peter J. Santos did ask me about this case after The People indicated it will not proceed with the previous offer and I stated that I am not assigned to the case (at the time).

5. I do not recall making other statements beyond the aforementioned to him.

6. I have made the same statement to other members of the Alternate Public Defender office when asked about this case.

7. I do recall Assistant Alternate Public Defender Peter J. Santos making comments to the effect of what he attributes to me saying, "it was very fair and what everyone else gets", however, my recollection is that I did not respond to him.

*Atty. Borja's Decl. of Counsel* (Jul. 15, 2024) ¶¶ 3-7.

On July 15, 2024, Defendant Hattig filed a Motion for Preservation requesting the Court to order the OAG to preserve "all emails memorandums, texts, correspondences or related items where Assistant Public Defender Peter J. Santos is mentioned from January 1, 2022 to present," and to allow defense counsel to review the same materials. *Deft.'s Mot. for Preservation* (Jul. 15, 2024) at 1-2. The People filed their Opposition to Defendant's Motion for Preservation on July 31, 2024, citing work-products protections Guam statute. *See Ppl.'s Resp.* (Jul. 31, 2024). Additionally, the People opposed the subpoena tuces decum served upon the OAG for procedural and statutory defectiveness. *See Id.*

On October 15, 2024, Attorney Borja, who had by then left the OAG for private practice, filed a Witness's Motion to Quash Subpoena, wherein she requested the Court to quash the subpoena served upon her by the OAG because the information sought is "protected by the Guam Rules of Professional Conduct and attorney work product." *Atty. Borja's Mot. to Quash Subpoena* (Oct. 15, 2024) at 4. Subsequently, on November 20, 2024, Attorney Borja filed a Witness's Motion to Quash Subpoena, wherein she requested the Court the same relief as her prior motion but in regards to defense counsel for Defendant Hattig. *See Atty Borja's Mot. to Quash Subpoena* (Nov. 20, 2024) at 4.

On November 21, 2024, Defendant Hattig filed a Supplemental Declaration of Counsel in Support of Motion to Dismiss Superseding Indictment, wherein he attached transcripts of the aforementioned sentencing hearings in CF0524-23 and email correspondences between the OAG and Alternate Public Defender. *See Supp. Decl.* (Nov. 21, 2024).

## DISCUSSION

**A. Applicable law governing plea agreements.**

Guam law regulates plea bargaining in criminal matters. 8 GCA § 60.80 reads as follows:

(a) The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will move for dismissal of other charges, or will recommend or not oppose the imposition of a particular sentence, or will do both. *The court shall not participate in any such discussion.*

8 GCA § 60.80(a) (emphasis added). § 60.80 further provides the Court's role in the plea bargaining process:

(b) If a plea agreement has been reached by the parties which contemplates entry of a plea of guilty or nolo contendere in the expectation that a specified sentence will be imposed or that other charges before the court will be dismissed, the court shall require the disclosure of the agreement in open court at the time the plea is offered. Thereupon the court *may accept or reject the agreement, or may defer its decision as to acceptance or rejection* until there has been an opportunity to consider the presentence report.

8 GCA § 60.80(b) (emphasis added). The statute further regulates the Court's actions upon acceptance or rejection of a plea agreement. *See* 8 GCA §§ 60.80(c)-(d). The Court reads section 60.80 that the parties may come to an agreement regarding resolution to a criminal matter, but the resulting formal plea agreement only becomes *enforceable* upon the Court's acceptance of the plea agreement – such agreement is subject to the approval of the Court as prescribed in sections 60.80(b)-(d). *See People v. Chiguina*, 2003 Guam 11 ¶ 10 ("[T]he mandatory requirement under section 60.80(c) apparently 'serves the purpose of informing the defendant immediately that the agreement will be implemented.'") (citing Fed. R. Crim P. 11 advisory committee's note to 1974 amendments to 11(e)(3)). Further, section 60.80(f) provides that "evidence. . .of an offer to plead guilty. . .or of statements made in connection with any of the foregoing pleas or offers, is *not admissible* in any civil or criminal proceeding against the person who made the plea or offer." 8 GCA § 60.80(f) (emphasis added).

Guam caselaw regarding plea agreements is not particularly silent on the issue of enforcement of plea agreements – however, the Guam Supreme Court and the related facts of those cases dealt with plea agreements *after* execution of the plea, and more importantly, following a court's *acceptance* of the plea agreement.[3] The instant case is distinguishable in that this Court has not accepted or rejected a plea agreement, rather an agreement may have been reached but later terminated by the People.

8 GCA § 60.80 is based on proposed Rulle 11(e) of the Federal Rules of Criminal Procedure and Standards 1.5, 2.2, 3.3, and 3.4 set forth in ABA, Project on Minimum Standards for Criminal Justice Pleas of Guilty (Approved draft 1968). *See* Notes to 8 GCA § 60.80. Therefore, the Court turns to federal caselaw regarding the interpretation of Rule 11 for guidance and instruction.[4] *See People v. Chung*, 2004 Guam 2 ¶ 13 (The *Chung* Court relied on federal caselaw interpreting Rule 11 in its analysis of 8 GCA § 60.50).

//

//

---

[3] The Court cites to two court cases that illustrates this distinction from the present case. The facts of *People v. Mallo*, 2008 Guam 23, include the sentencing of a defendant after the execution of a plea agreement. Said plea agreement gave discretion to the sentencing judge whether to apply credit for time served. *See Mallo*, 2008 Guam 23 ¶ 1. The plea agreement also included language that the defendant would be liable to for any restitution. *See Id.* ¶ 4. The Guam Supreme Court held that (1) the plea agreement did not constitute a knowing, intelligent, and voluntary waiver of his right to credit for time served, and (2) the defendant effectively waived his arguments related to restitution. *See Id.* ¶¶ 34-36, 52-57.

The Court also cites to *People v. Chiguina*, 2003 Guam 11, wherein the original trial court judge accepted the terms of the plea agreement but delayed sentencing until further disposition by the co-actors – however, upon the former trial court judge's appointment to the Guam Supreme Court, a new trial court judge was assigned and sentenced the defendant to a sentence that deviated from the terms of the plea agreement. *See Chiguina*, 2003 Guam 11 ¶¶ 3-4. In this case, the Guam Supreme Court held that the trial court was empowered by § 60.80(c) to sentence the defendant to a sentence more favorable than what was provided in the plea agreement. *See Id.* ¶ 12.

[4] The *Chiguina* Court recognized that "under a majority of jurisdictions, including those who follow the Federal Rules of Criminal Procedure, the trial court's broad sentencing discretion is constricted when the court accepts the *plea* or the *plea agreement*." *Chiguina*, 2003 Guam 11 ¶ 8 (emphasis in original). Guam trial court judges are not similarly constricted by the four corners of an agreement and have broader discretion to sentence a defendant pursuant to the plea agreement. *See Id.* ¶ 9. However, this does not affect this Court's use of caselaw to interpret Rule 11 of Federal Rules of Criminal Procedure, especially given the distinction that the Court has *neither accepted nor rejected* a plea agreement in this matter.

## B. A plea agreement is only effective upon acceptance by the Court.

"The law governing the interpretation of plea agreements is an amalgam of constitutional, supervisory, and private contract law concerns." *United States v. Novosel*, 481 F.3d 1288, 1291 (10th Cir. 2007) (quoting *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004). Although a plea agreement is a contract between the government and the defendant, "plea agreements are not simply creatures of contract law. Rather the integrity of our criminal justice system allows each side to withdraw from a plea agreement before it is accepted by the court." *United States v. Rosario-Cruzado*, 396 F.Supp.3d 661, 666 (W.D. Va. 2019). A plea agreement is only effective upon acceptance by the court. *See Rosario-Cruzado* at 666. "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, *until embodied by the judgment of a court*, does not deprive an accused of liberty or any other constitutionally protected interest." *Novosel* at 1292 (emphasis added) (quoting *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 81 L.Ed. 2d 437 (1984). Certainly, if a court accepts a plea agreement, the court is bound to sentence by that agreement – however, upon a court rejecting a plea agreement, the defendant may withdraw their plea. *See Rosario-Cruzado* at 666.

> Rule 11 does not address whether there are circumstances under which as signed plea agreement may be binding on the government prior to the defendant's entry of a guilty plea. The Supreme Court has held that when a prosecutor withdraws a plea agreement before the defendant enters his plea, *the defendant cannot specifically enforce it.*

*Novosel* at 1293 (emphasis added) (citing *Mabry*, 467 U.S. at 511, 104 S. Ct. 2543). Conversely, the government may withdraw a plea agreement before the Court accepts it.

## C. If detrimental reliance upon a plea agreement is shown, withdrawal is not permitted.

Although the government is not bound by a plea agreement prior to its acceptance by a court, "where detrimental reliance is shown, the government may be bound even before the district

court accepts the agreement." *Id.* (quoting *United States v. Kuchinski* 469 F.3d 853, 857-58 (9th Cir. 2006). However, the *Norris* court has declined to find detrimental reliance on a withdrawn plea agreement before a court's formal acceptance of the plea agreement or an express term in the agreement requiring pre-plea performance:

> *Absent the district court's formal acceptance of the defendant's guilty plea or an express provision in the plea agreement requiring certain pre-plea performance,* we have consistently declined to recognize any bases for detrimental reliance by the defendant that would warrant specific performance of the plea agreement on due process or any other grounds.

*United States v. Norris*, 486 F.3d 1045, 1049 (8th Cir. 2007) (emphasis added). "The realization of whatever expectations the prosecutor and defendant have as a result of their bargain depends entirely on the approval of the trial court. Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea." *Id.* (quoting *United States v. McGovern*, 822 F.2d 739, 744 (8th Cir. 1987)).

"The Government's right to withdraw from a plea agreement before it is accepted by the district court is qualified by the requirement that the Government gain no unfair advantage from the withdrawal in future proceedings against the defendant." *Norris* at 1049. An example of such unfair advantages includes "use at the defendant's subsequent trial of statements the defendant made during the plea negotiations or in the course of cooperating with the Government under the terms of the plea agreement." *Id.*

Here, the Court finds that the People were within their right to withdraw their plea offer to Defendant Hattig prior to the Court's acceptance of it. The Defendant requests this Court to order for the enforcement of the prior plea agreement that was agreed to on October 13, 2023. *See Deft.'s Mot.* At 2. However, such plea agreement's effectiveness is not dependent on the agreement between the parties or an acknowledgment of the reached plea bargain. Rather, an *effective* plea

agreement is *solely* dependent on the approval and acceptance of the plea agreement *by the Court*. By the very nature of our criminal court system, plea agreements to resolve criminal matters are *distinct* from contracts formed in the regular course of business. *See Rosario-Cruzado* at 666. At any time, the People may withdraw an offer, and the Defendant may withdraw any offer *vice versa*, even after an agreement has been reached by the parties. Because the effectiveness of the plea agreement is solely dependent on the Court's approval, so too does any detrimental reliance Defendant Hattig may have had because of the prior agreement. For the Defendant to expect specific performance of an agreement, the agreement must first be *effective*, and again, effectiveness is determined by the Court's *acceptance* of the agreement pursuant to 8 GCA §§ 80.60(b)-(c). Additionally, no showing has been made that the People have used statements made by the Defendant during the course of negotiations to their unfair advantage, and certainly the People are prohibited of such use. *See Norris* at 1049. Further, the Defendant has failed to show that a provision in the prior plea agreement requires specific performance by either side *before the plea agreement was approved by this Court. See Id.*

Therefore, the Court finds that the People were within their right to withdraw the plea agreement, and such agreement was not effective pursuant to 8 GCA § 80.60.

**D. The Court may not participate in any plea negotiations between the parties.**

8 GCA § 60.80(a) clearly prohibits the Court's involvement in plea negotiations between the parties: "*The court shall not participate in any such discussions.*" 8 GCA § 60.80(a) (emphasis added). Defendant Hattig argues that the People withdrew the prior plea agreement because of prosecutorial vindictiveness and therefore requests this Court to enforce the plea agreement. The Defendant's request for the Court to enforce a prior plea agreement, especially in consideration of the above analysis finding that plea agreements are *only* effective after a court's acceptance,

appears to request this Court to "pierce the veil" of their negotiations, so to speak, and interpret the People's conduct as vindictive. The Court declines to find or speculate as to the motivations for the People to withdraw the plea agreement, for making such a finding or mere speculation *compels the Court to participate in such discussions* as prohibited by section 60.80(a).

APD Santos supplied the Court with transcripts from events that occurred before another trial judge. *See APD Santos's Supp. Decl., Exhibs. A-C.* However, the Court does not find the proceedings in an unrelated matter before a different court relevant to its determination. Therefore, the Court declines to make any finding of prosecutorial vindictiveness in respect to the parties' plea agreement negotiations. Moreover, the Court finds that the plea agreement is not enforceable as to either party unless and until accepted by the Court.

## CONCLUSION

For the above reasons, the Defendant's Motion to Enforce the Prior Accepted Plea Agreement is **DENIED**.

**SO ORDERED** this 19th day of February, 2025.

_____

**HONORABLE MARIA T. CENZON**
Judge, Superior Court of Guam

**SERVICE VIA EMAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:

AG, POSC
_____

Date: 2/19/25 Time: 4:56pm

Antonio M Cruz
Deputy Clerk, Superior Court of Guam